# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 11-21-2017 | 11-21-2024 | 2150876-0002 | 4.1h / 700 | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** International Fine Art LLC
4132 Shoreline Drive
Earth City, MO 63045

**Lender:** Scott Credit Union
Business Services Dept.
101 Credit Union Way
P.O. Box 70
Edwardsville, IL 62025

GOVERNMENT EXHIBIT 19

**Principal Amount: $200,000.00** **Initial Rate: 8.750%** **Date of Note: November 21, 2017**

**PROMISE TO PAY.** International Fine Art LLC ("Borrower") promises to pay to Scott Credit Union ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

DRAWS AND REPAYMENTS OF PRINCIPAL DURING THE REVOLVING LOAN TERM; PAYMENTS OF INTEREST DURING THE REVOLVING LOAN TERM. Provided that Borrower is not then in default under the terms of the Loan or the note, and further provided that less than the Maximum Principal Amount has then been drawn, at any time during the Revolving Loan Term Borrower shall be entitled to draw and repay any amounts of principal from time to time available under the Loan and the Note, up to the Maximum Principal Amount. Absent any demand for earlier repayment, during the Revolving Loan Term, Borrower will repay the amounts from time to time outstanding under the Loan and the Note in accordance with the following payment schedule: Twenty Four (24) monthly consecutive interest only payments (individually, a "Revolving Payment" or, collectively, "Revolving Payments"), beginning ONE MONTH FROM THE DATE THIS NOTE IS DATED, and continuing on the same day of each month thereafter through the 24th month (individually, a "Revolving Term Payment Date" or, collectively, the "Revolving Term Payment Dates"), with interest calculated on the unpaid principal balances at the Variable Interest Rate up through the applicable Revolving Term Payment Date. It is anticipated that a statement relating to the applicable monthly Revolving Payment will be sent to Borrower prior to each Revolving Term Payment Date, which statement shall set forth the Revolving Payment amount that would be due through such Revolving Term Payment Date if Borrower did not receive any draws or make any principal payments between the date such statement was sent and the Revolving Term Payment Date. Since Borrower may, as a practical matter, receive draws or make principal payments between the date such statement is sent and the applicable Revolving Term Payment Date - which draws or principal payments would result in a change in the actual amount of such Revolving Payment - any necessary adjustments shall be made in the immediately following statements sent to Borrower. Borrower expressly understands and agrees that the amounts of the monthly Revolving Payments will periodically change based upon: (i) the amount of principal then drawn and outstanding in connection with the Note, and (ii) periodic changes in the Variable Interest Rate. Unless otherwise mutually agreed in writing, or unless otherwise required by applicable law, Revolving Payments will be applied as follows: (a) Revolving Payments received on or prior to the date of the statement relating to the next scheduled Revolving Payment, and which are equal to the billed amount will be applied "as billed" through the Revolving Term Payment Date, regardless of the date such Revolving Payments are actually received, (b) Revolving Payments received subsequent to the date of the statement relating to the next scheduled Revolving Payment shall be applied first to past due Revolving Payments, then to collection costs, then to late fees, then to the next scheduled Revolving Payment for which a statement has been sent, and then to principal, (c) Revolving Payments received that are in excess of the billed amount, and with respect to which no Revolving Payments are then past due, will be applied first to any collection costs, then to late fees, then to interest through the date of receipt, and the remaining amount to principal.

REPAYMENT OF TERM LOAN PORTION. Subsequent to the payment of the last Revolving Payment, Borrower shall pay the then outstanding balance of principal and accrued but unpaid interest, together with interest at the Variable Interest Rate, in Sixty (60) equal monthly additional consecutive payments (individually, a "Term Payment" or, collectively, the "Term Payments"), with the first such Term Payment being due TWO YEARS AND ONE MONTH FROM THE DATE OF THE NOTE, and continuing on the same day of every month thereafter through the 60th month (individually, a "Term Portion Payment Date" or, collectively, the "Term Portion Payment Dates"). Borrower expressly understands and agrees that the amount of all the monthly Term Payments will change based upon periodic changes in the Variable Interest Rate. The final Term Payment shall be in the amount of all then outstanding principal and accrued but then unpaid interest, together with any other unpaid amounts under the Note. Unless otherwise agreed or required by applicable law, Term Payments will be applied first to any unpaid collection costs, then to any late charges, then to any unpaid interest, and any remaining amount to principal.

FINAL MATURITY DATE. Consistent with the Twenty Four (24) month Revolving Loan Term and the Sixty (60) month Term Loan Portion, as well as the "LOAN TERM" listed at the outset of the Note, all then unpaid principal and accrued but unpaid interest relating to the Note and the Loan shall be due and payable in full on the date that is Eighty Four (84) months from the date of the Note.

The interest rate will be adjusted every calendar quarter, beginning with the first calendar day of the calendar quarter following the date of the Note.

Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the PRIME RATE FROM TIME TO TIME SET FORTH IN THE "MONEY RATES" SECTION OF THE WALL STREET JOURNAL (the "Index"). THIS DEFINITION OF THE INDEX IS TO BE STRICTLY INTERPRETED, AND IS NOT INTENDED TO SERVE ANY PURPOSE OTHER THAN PROVIDING AN INDEX TO DETERMINE THE VARIABLE INTEREST RATE APPLICABLE TO THIS NOTE. BORROWER UNDERSTANDS THAT THE INTEREST RATE APPLICABLE TO THIS NOTE IS NOT NECESSARILY THE LOWEST INTEREST RATE CHARGED BY LENDER ON ITS LOANS. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each first (1st) day of every calendar quarter (individually, a "CHANGE DATE" or, collectively, the "CHANGE DATES") during the Loan Term on the terms and conditions set forth herein. The change in the Variable Interest Rate is effective on the applicable CHANGE DATE, whether or not Lender gives Borrower notice of such change. Except as otherwise mutually agreed in writing, or except as otherwise required by applicable law, no limitations shall apply to the amount of increase or decrease in the Variable Interest Rate that takes place on any CHANGE DATE. Each change in the Variable Interest Rate shall result in a

corresponding change in the amount of the monthly Term Payments, as applicable. Additionally, in the event that the applicable change involves an increase in the Variable Interest Rate, Lender may exercise any of the options available to it under the terms of the section of the Note entitled "VARIABLE INTEREST RATE". Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 4.500 percentage points over the Index, resulting in an initial rate of 8.750%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Scott Credit Union, Business Services Dept., 101 Credit Union Way, P.O. Box 70, Edwardsville, IL 62025.**

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 4.500 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: inventory, chattel paper, accounts, equipment, general intangibles and fixtures described in a Commercial Security Agreement executed on November 21, 2017.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**WHEN FEDERAL LAW APPLIES.** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notices, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $27.00 if Borrower makes a payment on Borrower's loan and the check or

preauthorized charge with which Borrower pays is later dishonored.

**STATUTORY LIEN.** Borrower agrees that all loan advances under this Note are secured by all shares and deposits in all joint and individual accounts Borrower has with Lender now and in the future. Borrower authorizes Lender, to the extent permitted by applicable law, to apply the balance in these accounts to pay any amounts due under this Note when Borrower is in default under this Note. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest Borrower has given in Borrower's shares and deposits.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Lawrence A. Kernz, Member of International Fine Art LLC.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SBA ENFORCEMENT.** This loan secured by this lien is made under a United States Small Business Administration (SBA) nationwide program that uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, the following provisions apply:
When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**PREPAYMENT NOTICE REQUIREMENT.** Notwithstanding any provision in this Note to the contrary, Borrower may prepay this Note.

Borrower may prepay 20% or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.**

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**INTERNATIONAL FINE ART LLC**

**By:** [signature]
**Lawrence A. Kernz, Member of International Fine Art LLC**

LaserPro, Ver. 17.3.0.019 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - IL C:\LaserPro\CFI\LPL\D20.FC TR-6743 PR-354